UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,
          *Plaintiff,*

v.                                                No. **1:12-cr-03182-JB-6**

MANUEL VALENCIA,
          *Defendant.*

## MOTION TO SEVER DEFENDANT AND SUPPRESS STATEMENTS OF OTHER ALLEGED CO-CONSPIRATORS

DEFENDANT MANUEL VALENCIA states the following in support of this motion to sever from the other defendants and, under United States v. James, 590 F.2d 575 (5th Cir Ga 1979), to exclude their statements from his trial:

### A. CO-CONSPIRATOR EXCEPTION

1.     Rule 801(d)(2) treats co-conspirator statements as a type of party admission based upon the legal fiction that each conspirator acted as an agent for the others and that the statements of one agent can therefore be attributable to all. Fed.R.Evid. 801(d)(2)(E) Notes of Advisory Committee on Proposed Rules ("at best a fiction").[1] At issue in the present motion, then, is the weight of evidence suggesting that defendant Valencia agreed to act and did act as an agent for a drug conspiracy. The government must, and cannot, establish that the

---

1   Compare Fed.R.Evid. 801(d)(2)(D and E).

conspiracy included defendant Valencia as a knowing and voluntary member. Absent sufficient independent evidence to prove the existence of defendant Valencia's knowing participation in a conspiracy to distribute cocaine,[2] under Fed. R. Evid. 801(d)(2)(E), the court must exclude hearsay statements of other defendants[3] from consideration by his jury.

2. **Elements of Co-conspirator Exception**. The prosecution must establish more likely than not by a preponderance of evidence that the predicate conspiracy *included the defendant.*[4] A mixed question of law and fact, the government must establish to the court's satisfaction before trial the following: (1) an **agreement** by two or more persons including the defendant and the declarant to violate the law; (2) **knowledge** by defendant of the objectives of the conspiracy; (3) his **knowing and voluntary involvement** in the conspiracy; and (4) **interdependence** of defendant and other co-conspirators. United States v. Foy, 641 F.3d 455, 465 (10th Cir), cert. denied, 132 S. Ct. 467 (2011).

---

2  The government does not allege that defendant Valencia conspired with others to distribute marijuana, launder money, deposit currency or purchase property from the fruits of the sale of drugs. Doc 2 (indictment).

3  Defendant is not aware of any unindicted co-conspirators. Upon full disclosure, defendant Valencia does not object at this time to anything he said in the recorded conversation under indictment, anything he may have said in unindicted cell phone conversations or statements he made to the police. From the government's vantage, those would be statements by a party opponent. Fed.R.Evid 801(d)(2)(A)(not hearsay). Defendant reserves the right to file a supplemental pleading once the government complies with the Discovery Order in this case.

4  Bourjaily v. United States, 483 U.S. 171, 176 (1987) cited in U.S. v. Hernandez, 829 F.2d 988, 993 (10th Cir CO 1987).

3.     (1) **Agreement by Defendant**. An agreement to distribute drugs may be inferred from the facts and circumstances of the case. Foy at 465. To establish the existence of a conspiracy, "mere presence" or "mere association with conspirators known to be involved in crime" is insufficient. Id. Similarly, "the government must do more than show there were casual transactions between the defendant and the conspirators." Foy at 465, *quoting* United States v. Caldwell, 589 F.3d 1323, 1331 (10th Cir 2009)

4.     Other than one transaction with Christopher Roybal by cell phone in April 2012,[5] there is no direct or circumstantial evidence that defendant agreed to become a member of any conspiracy. Apart from this conversation, there is no evidence of any criminal contact involving defendant Valencia between the first transaction under indictment in April 2011 until April 2012, a span of one year. Likewise the government alleges no criminal association between this one occasion in April 2012 and the termination of the conspiracy by arrest of all parties in December 2012. Mere association with co-defendant Christopher Roybal, who defendant mentored after the untimely death of Roybal's

---

5   The government has yet to disclose anything to defendant, and so the exact nature of the April 2012 communication on a cell phone can only be recalled subjectively at this time by the defendant.

father, is hardly evidence of criminal association or an agreement to conspire to distribute cocaine.

5. **(2) His Knowledge of the Objectives**. In this case the objectives of the drug conspiracy can be easily deduced by what it accomplished, namely the collection of millions of dollars in currency, the purchase of countless vehicles and realty, and the movement of funds between accounts. The disconnect is tying defendant Valencia to any of those objectives. There is no direct evidence that defendant knew what was happening or was even present at any transaction. He was not present when others purchased land, bought cars or deposited thousands of dollars into bank accounts. He gained no ownership interest in the land or cars or accounts, never set foot on the property or drove any of the cars or spent a dime from those accounts. There is no evidence that he was ever informed of such transactions and certainly he was never informed about any transactions that were tainted by money collected from the distribution of controlled substances. There is no evidence that he collected one gram of cocaine, one penny from this multi-million dollar enterprise, a single car or realty. In short, nothing would suggest his knowledge of a conspiracy involving others. One ambiguous cell

phone call cannot establish knowledge of the objectives of a conspiracy.

6. (3) **His Voluntary Involvement**. To connect a defendant to a conspiracy, the Government must show that the defendant not only *knew* of the conspiracy but *voluntarily* joined it having such knowledge. United States v. Ismoila, 100 F.3d 380, 387 (5th Cir.1996)(emphasis added). Apart from the phone conversation, there is no direct or circumstantial evidence that defendant made a voluntary decision, armed with knowledge of the conspiracy, to involve himself as a participant. The government even lacks any motive to become involved as there is no evidence that defendant used cocaine and no evidence that defendant stood to profit from the conspiracy or had any financial interest in illegitimate business considering the extent of his own financial holdings. Defendant never possessed the cocaine, never obtained the fruits of drug transactions in terms of currency or property, and never involved himself with full knowledge of the criminal enterprise.

7. (4) **Interdependence** "requires proof that the conspirators intended to act together for their shared mutual benefit within the scope of the conspiracy charged." United States v. Hamilton, 587 F.3d 1199, 1208

(10th Cir. 2009) (emphasis and quotations omitted). "The requirement is satisfied if the alleged co-conspirators were united in a common unlawful goal or purpose and if a defendant's activities facilitated the endeavors of another alleged co-conspirator or facilitated the venture as a whole." Id. (emphasis and quotations omitted); see also United States v. Edwards, 69 F.3d 419, 431 (10th Cir 1995) ("interdependence exists where each co-conspirator activities constituted essential and integral steps toward the realization of a common, illicit goal").

8. The government need not establish that "the co-conspirators know the identities or details of each scheme or have connections with all other members of the conspiracy." Foy at 465. But unlike the foregoing cases in which the government demonstrated that a defendant was involved in numerous low level purchase from other conspirators and resale of cocaine for profit,[6] in the present case there is no evidence that defendant ever purchased cocaine, used it, sold it to others or obtained any profit from purchases and sales. There is simply no nexus between defendant Valencia and the other eighteen (18) defendants.

9. Another undisputed fact undercutting the interdependence prong is the complete absence of any longevity of defendant's criminal

---

6   United States v. Goodwin (10th Cir 2011)

association. Compare Boyle v. United States 556 U.S. ___ (2009) (racketeering) at slip op. 10 ("sufficient duration to permit an associate to 'participate' in those affairs") The indictment suggests a grand conspiracy lasting at least twenty (20) months between the first indicted transaction in April 2011 and the arrests in December 2012 with distinct patterns of purchases, sales, laundering and investments. And yet defendant's participation lasted a brief moment of one day during a solitary cellphone conversation with one co-conspirator The government does not provide a logical explanation supported by objective facts as to why the conspiracy thrived without defendant for over one year, why the major conspirator included defendant into the conspiracy for one conversation, what defendant knew when he supposedly joined into the conspiracy, and why any involvement and "interdependence" ceased as quickly as it began with no further criminal association for the remaining eight months of the conspiracy. The short duration of a solitary conversation lends little support to any likelihood that defendant knew about a grand conspiracy nor does the short duration suggest a likely interdependence between him, the conspiracy and the co-conspirators

B. CONFRONTATION CLAUSE ANALYSIS

10. **Confrontation Clause**. If the court finds a predicate conspiracy involving defendant Valencia by a preponderance of evidence, the court must proceed to determine whether admission of statements[7] would violate his constitutional rights under the Confrontation Clause. The solitary act by which the government has indicted defendant is a telephone call with co-defendant Christopher Roybal, who himself has been indicted and thus unavailable for cross-examination by defendant at trial. Fed.R.Evid. 804(a)(1)(unavailable because of right to remain silent). Any other intercepted communications will likely involve co-defendants who will be unavailable for cross examination because of their Fifth Amendment privilege against self-incrimination. United States v. Kapnison, 743 F.2d 1450, 1458 (10th Cir NM 1984)("if called to testify he would invoke his Fifth Amendment privilege by refusing to testify ... The government conceded that under such circumstances, [the declarant] was 'unavailable' under Fed.R.Evid. 804(a)(1)"). Out of court statements from unavailable witnesses will trigger an objection by defendant Valencia based upon the Confrontation Clause and, in the

---

7   The Confrontation Clause is not implicated as to statements by co-conspirators who agree to testify at trial, nor as to any government agents who will be available at trial and subject to cross examination.

interest of judicial economy,[8] the court should visit this issue before trial.

11.   The following four factors are relevant to the Confrontation Clause inquiry: (1) whether the declaration contained assertions of past fact; (2) whether the declarant had personal knowledge of the identity and role of the participants in the crime; (3) whether it was possible that the declarant was relying upon faulty recollection; and (4) whether the circumstances under which the statements were made provided reason to believe that the declarant had misrepresented the defendant's involvement in the crime. Dutton v. Evans, 400 U.S. 74, 88-9 (1970).

12.   These four factors guide the court's attention at the overarching question in this constitutional context, namely whether each co-conspirator statement taken separately bears such sufficient "indicia of reliability" that its trustworthiness is clearly demonstrated without the safeguard afforded under the constitution for vigorous cross-examination by defense counsel. See Ohio v. Roberts, 448, U.S. 56, 62-63 (1980).

13.   It is incumbent upon the government, in response to this motion,

---

8  Counsel surmises that the statements that will be used by the government at the James hearing will come from declarants who will be unavailable at trial, and many of those same statements will be examined under James and the Confrontation Clause.

to identify with particularity what statements of co-conspirators it intends to offer into evidence at trial against defendant and against any co-defendants in a joint trial.[9] In a case involving recorded statements under wire tap, this simply requires verbatim transcripts of the statements in question. In addition to the transcript of each statement, the government should indicate the assertion of past fact and its relevance to the case in chief against defendant.

14. Second, the government should establish how the declarant knew defendant Valencia was among those participating in the crime.

15. Third, the government should declare why the recollection was accurate particularly as to defendant's knowing agreement to participate and his involvement in the criminal conspiracy.

16. Fourth, the government should establish why the declarant had no bias or other motive to misrepresent defendant Valencia's involvement in the crime. These last two factors involve indicia of reliability in the statement offered into evidence.

## C. PROBATIVE VALUE

17. The government should also establish the relevance and probative

---

9  The judge may direct the disclosure of the statements of co-defendants to him for in camera inspection as an aid to determining whether possible prejudice justifies ordering separate trials. Cf. note, Joint and Single Trials Under Rules 8 and 14 of the Federal Rules of Criminal Procedure, 74 Yale L.J. 551, 565 (1965).

value of any statement surviving the foregoing conspirator and confrontation challenges. Fed.R.Evid. 403.

18. If a statement is not relevant to defendant and his disputed participation in a conspiracy to distribute cocaine, but is intended to show the knowledge and participation of others in the distribution of cocaine and marijuana and the laundering of drug proceeds in bank accounts and realty, the unfairly prejudicial impact upon defendant substantially outweighs its probative value in proving his guilt. Although the court will admonish the jury to consider each defendant individually, the sheer breadth of nineteen (19) alleged conspirators uttering thousands of recorded statements will overwhelm the fact finder in its discrete analysis of whether defendant Valencia had anything to do with this grand conspiracy based upon a single indicted cellphone conversation with defendant Christopher Roybal.

### D. SEVER DEFENDANT

19. If the court were to find that most of the intercepted statements lack any probative value as to defendant Valencia's guilt, and that any such value is substantially outweighed by its unfairly prejudicial impact upon his defense, defendant's case and the limited evidence that relates

to his criminal conduct should be severed from the trial of the other co-defendants[10]

20. The present drug case joins strangers into one "chain conspiracy," a practice condemned by both the Supreme Court in Kotteakos v. United States, 328 U.S. 750 (1946) and the Tenth Circuit in United States v. Butler, 494 F.2d 1246 (10th Cir 1974). The district court should grant a severance under Rule 14 if there is a serious risk that a joint trial would compromise defendant's right to a fair trial, and prevent the jury from making a reliable judgment about guilt or innocence. Zafiro v. United States, 506 U.S. 534, 538-9 (1993). The greater the risk of prejudice, the more likely the trial court should "determine that separate trials are necessary." Id. see also United States v. Swingler, 758 F.2d 477, 20 Fed.R.Evid.Serv 1380 (10th Cir 1985). The court must prevent a joinder of defendants that may cause an actual or threatened deprivation to an individual's right to fair trial. Butler. A trial court has the continuing duty to insure that prejudice does not occur, and if it does, to sever defendants. Schaffer v. United States, 362 U.S. 511 (1960). The foreseeable risk in the present case is defendant's lone

---

[10] A district court's decision to deny severance is reviewed for abuse of discretion. United States v. Durham, 139 F.3d 1325, 1333 (10th Cir 1998). A defendant seeking reversal on this ground must make an affirmative showing of an abuse of discretion; that is, the defendant "must show actual prejudice resulted from the denial." United States v. Morales, 108 F.3d 1213, 1219 (10th Cir 1997).

telephone call getting lost in an avalanche of calls and purchases and transactions not involving him, just as his lone charge in the indictment has been lost in an avalanche of counts and pages involving other defendants, not him.

21.     The defenses between defendant and many of the eighteen (18) others joined in the indictment may be so antagonistic as to be mutually exclusive. United States v. Burrell, 720 F.2d 1488, 1492 (10th Cir.1983); see also Fed.R.Crim.P. 8(b) and 14 (prejudicial joinder of defendants). The jury may view defense counsel for defendant Valencia as a second prosecutor, showing the multitude of significant transactions and statements which did not involve his client in any way and thus calling into question whether one telephone call meant his knowing involvement in the conspiracy or, alternatively, his family association with the principal conspirators. There is a danger the jury will make an impermissible inference of guilt from this conflicting roles of defense counsel that all defendants are guilty, thus denying defendant a fair trial. United States v. Swingler, 758 F.2d 477, 495 (10th Cir 1985).

22.     It bears repeating that, in an indictment spanning 60 counts and 31 pages, the grand jury indicted defendant Valencia for a single

telephone conversation with Christopher Roybal. Limiting instructions as to the tremendous number of transactions which did not involve defendant Valencia would not reduce the situation to an acceptable level of risk that the jury convicts defendant not based on evidence relevant to his count but the weight of the evidence against others with whom he never associated.

## E. PRAYER FOR RELIEF

WHEREFORE defendant Valencia requests that the court:

A.  Assemble a hearing under United States v. James, 590 F.2d 575 (5th Cir Ga 1979),[11] requiring the government *inter alia* to establish defendant's knowing participation in the conspiracy;

B.  Find that the government failed to carry its burden of proof as to defendant's participation in the conspiracy and exclude as hearsay all statements not attributable to him;

C.  Suppress all statements which violate defendant's right of confrontation;

D.  Sever defendant from the trial of his co-defendants because of a substantial risk of unfair prejudice caused by the vast amount of

---

11  The pendency of James hearing may toll Speedy Trial calculations. United States v. Smith, 569 F.3d 1209, 1211 (10th Cir. 2009) citing 18 U.S.C. § 3161(h)(1)(D). Defendant nonetheless demands a speedy trial in this case.

evidence which is neither attributed to him nor relevant to the issue of his guilt; and,

E.    Grant such further relief as justice requires.

                                        Stephen D Aarons
                                        Counsel for Defendant Valencia
                                        311 Montezuma Avenue
                                        Santa Fé NM 87501

<u>Certificate of Service</u>

On the date of filing, an electronic copy of this pleading was automatically sent by the Electronic Management/Electronic Case Files (EM/ECF) system to opposing counsel of record.

                                        Stephen D Aarons
                                        Counsel for Defendant Valencia