**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                    No. CR 12-3182 JB

CHASE CAMERON,

      Defendant

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the United States' Motion to Revoke Magistrate Judge's Release Order, filed January 11, 2013 (Doc. 163)("Motion to Revoke"). The Court held a hearing on March 4, 2013. The primary issue is whether the Court should revoke the United States District Court for the Southern District of California's Order and Conditions of Pre-trial Release: Bail, filed Jan. 10, 2013 (Doc. 167)("Order of Release"), which orders that Defendant Chase Cameron be released from custody pending trial. See Rule 5 Documents Received as to Chase Cameron at 5, filed January 10, 2013 (Doc. 167)("Rule 5 Documents"). Because Plaintiff United States of America has shown by clear-and-convincing evidence that C. Cameron is a danger to the community, and by a preponderance of the evidence that he presents a risk of flight, the Court will grant the Motion to Revoke.

## FACTUAL BACKGROUND

C. Cameron was born on July 24, 1986, in Scottsdale, Arizona. See Pretrial Services Report at 1 (December 24, 2012)("Bail Report"). His mother, Margaret Cameron, currently resides in and owns a home in the state of Arizona. See Chase Cameron's Response to Revoke Magistrate Judge's Release Order at 1, filed February 28, 2013 (Doc. 223)("Response"). C.

Cameron's father, Henry Cameron, lives in Colorado, and C. Cameron has extended family in the states of Arizona, Illinois, and Indiana.  See Bail Report at 2.  C. Cameron states that he has lived in the same home in San Diego, California, since 1994.  See Response at 1.  The Bail Report indicates, however, that C. Cameron has lived at this current address since May, 2012, although California Department of Motor Vehicles records document it as his mailing address since December of 2010.  See Bail Report at 2.  Blackwood Industries has employed C. Cameron since February, 2012, and will continue to employ him if released.[1]  See Response at 2. Blackwood Industries employs C. Cameron as a telemarketer.  See Transcript of Hearing at 13:16-17 (taken March 2, 2013)("Tr.")(Arellanes).[2]  C. Cameron notes that he is currently single, but is the father of a baby boy who is living with the birth mother in Mira Mesa, California.  See Response at 1.

C. Cameron has a history of trouble with the law because of substance abuse.   C. Cameron was arrested in Imperial, California, on December 18, 2007, for being under the influence of a controlled substance.  See Bail Report at 4.  The disposition of that charge is not listed in the Bail Report.  See Bail Report at 4.  He was arrested in La Paz, Arizona, on January 8, 2008, and charged with transportation and sale of drugs, but those charges were dismissed. See Bail Report at 4.  He was arrested again in La Paz on May 5, 2008, for transportation and sale of marijuana, resulting in a misdemeanor conviction.  See Bail Report at 4.  C. Cameron was

---

[1] Blackwood Industries is an internet marketing company that uses online branding and marketing to promote clients on internet search engines.  The company headquarters is located at 16776 Bernardo Center Drive, Rancho Bernardo, California 92128.   See Google Local Optimization & Search Engine Marketing Experts, Blackwood Industries (June 13, 2013), http://bwindustries.com/node/24.

[2] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

arrested in San Diego, on September 9, 2009, for Unrestricted Sale and/or Distribution of Foods, Beverages, Merchandise From Mobile Food Unit on Public Property.  See Bail Report at 4.  C. Cameron did not appear in court when required, resulting in a failure to appear warrant being issued on November 5, 2009.  See Bail Report at 4.  The charges were dismissed on January 14, 2010.  See Bail Report at 4.

C. Cameron was arrested in San Diego on December 20, 2009 on two counts: (i) Driving Under the Influence; and (ii) Possession of a Controlled Substance.  See Bail Report at 5.  He was released on bond that day, but failed to appear for his court date on December 29, 2009, resulting in a failure to appear warrant being issued.  See Bail Report at 5.  These charges resulted in a felony conviction with five years of formal probation following 180 days in jail.  See Bail Report at 5.  The probation period began on February 25, 2010, and he was scheduled to be discharged on February 24, 2013.  See Bail Report at 5.

C. Cameron was arrested in Cincinnati, Ohio, on September 6, 2012 for: (i) disorderly conduct, (ii) obstructing official business, (iii) resisting arrest, (iv) possession of drugs, (v) drug paraphernalia, and (vi) criminal mischief.  See Bail Report at 5.  He received a misdemeanor conviction for obstructing official business and one for criminal mischief; the rest of the charges, including resisting arrest, were dismissed.  See Bail Report at 5.

Finally, C. Cameron was arrested in San Diego, on December 12, 2012, for Driving Under the Influence.  See Bail Report at 5.  He was released on bond, and was scheduled for arraignment in San Diego Municipal Court on January 23, 2013.  See Bail Report at 5.

C. Cameron brings to the Court's attention that, although he was on probation before the current arrest, it was an unsupervised probation; he had completed all programs that the San Diego court required and would have finished his probation February 24, 2013.  See Response at

2.  C. Cameron also points out that he turned himself in to the authorities in compliance with the warrant for his arrest in May, 2008.  <u>See</u> Response at 2.  C. Cameron denies that a high speed chase occurred incident to the current arrest and suggests instead that he accidentally hit a curb while pulling over his vehicle.  <u>See</u> Response at 2.

At the hearing, the United States explained in more detail the C. Cameron's drug trafficking operations, including the procedures the traffickers used to move money through the Albuquerque, New Mexico airport and various bank accounts.  <u>See</u> Tr. at 3-6 (Meyers).  The United States asserted that C. Cameron would fly into the Albuquerque airport to receive cash that other people brought through security.  <u>See</u> Tr. at 4:1-12 (Meyers).  In 2011, cash deposits were made into C. Cameron's bank account from various locations in New Mexico, Texas, and Alabama, totaling $68,500.00.  <u>See</u> Motion to Revoke at 4.  Several times in 2012, C. Cameron made cash deposits into an Ohio bank account, from which funds would be withdrawn immediately by banks in California.  <u>See</u> Tr. at 5:10-22.  The United States also contended that, when C. Cameron noticed the surveillance officers following him to make the current arrest, he fled, which led to a high speed chase that ended only when C. Cameron crashed his car.  <u>See</u> Tr. at 8:9-9:14 (Meyers).

## PROCEDURAL BACKGROUND

On December 12, 2012, a federal grand jury sitting in Las Cruces, New Mexico, returned an indictment charging C. Cameron with: (i) Conspiracy to Distribute 50 Kilograms and More of Marijuana, in violation of 21 U.S.C. § 846; and (ii) Conspiracy to Launder Monetary Instruments in violation of the 18 U.S.C. § 1956(h).  <u>See</u> Rule 5 Documents at 9-10.  On December 21, 2012, C. Cameron was arrested in the Southern District of California.  On December 24, 2012, C. Cameron appeared for his initial appearance before the Honorable Jan M. Alder, United States

Magistrate Judge for the Southern District of California.  On January 10, 2013, following a detention hearing, Judge Adler ordered C. Cameron released upon posting a $75,000.00 bond, which C. Cameron and M. Cameron, secured.

On January 11, 2013, the United States filed its Motion to Revoke.  The United States asserts that, pursuant to 18 U.S.C. § 3145(a), a magistrate judge's release order should be considered in the first instance by a district judge in the court of original jurisdiction.  See Motion to Revoke at 2.  The United States notes that, because the court of original jurisdiction is the United States District Court for the District of New Mexico, Judge Adler issued a Warrant of Removal on January 14, 2013, pursuant to rule 5(c) and 5.1(a) of the Federal Rules of Criminal Procedure, ordering the United States Marshal to commit C. Cameron to the custody of the United States Marshal for the United States District Court for the District of New Mexico.  See Rule 5 Documents at 6.  The United States requests that the Court revoke the Order of Release for the following reasons: (i) C. Cameron has offered insufficient facts to rebut the presumption that no condition or combination of conditions exist that would reasonably assure his future appearance in court as required or the safety of the community; (ii) C. Cameron is currently on probation in California; (iii) C. Cameron has a lengthy history of substance abuse which resulted in a recent arrest for driving under the influence of alcohol; (iv) C. Cameron has failed to appear in court on previous occasions which resulted in warrants issued for his arrest; (v) C. Cameron's ties to interstate drug activity and access to large sums of cash suggest both a flight risk and danger to the community; and (vi) when the government agents tried to apprehend C. Cameron he fled and did not surrender until after crashing his car.  See Motion to Revoke at 3-4.

On February 28, 2013, C. Cameron filed his Response, urging the Court to deny the Motion to Revoke, or, in the alternative, to impose more stringent conditions if the Court decides

to allow C. Cameron to be released from custody.  See Response at 3.  C. Cameron suggests elevating the conditions of release to include, along with the $75,000.00 cash bond, a property bond for a house his mother owns in Arizona and third party release to M. Cameron.  See Response at 3.  C. Cameron states that, if he is released, he will continue to live in the house in San Diego where he has been residing.  See Response at 1.

The Court held a hearing March 2, 2013.  At the hearing, Plaintiff United States of America reiterated its request to revoke Judge Adler's release order, emphasizing that no conditions of release would be sufficient to assure C. Cameron's appearance before the Court in future proceedings.  See Tr. at 2:1-8 (Meyers).  The United States acknowledged that C. Cameron has a loving and supportive family, but urged the Court that the time for considering his supportive family has passed, and C. Cameron needs to remain in the United States Marshals Service's custody.  See Tr. at 9:7-15 (Meyers).

C. Cameron retracted his proposed condition that he be released to live with his mother, as that arrangement is no longer a viable option for his family.  See Tr. at 10:5-11 (Arellanes).  Instead, C. Cameron proposed that he be released to a half-way house in San Diego, and that the Court couple a property bond with a cash bond and electronic monitoring.  See Tr. at 10:12-16 (Arellanes).  C. Cameron also continued to assert that he did not resist arrest or flee the officers before his arrest on the current charges, but asserts that, when they began to chase him, he pulled over and his car hit the curb accidentally.  See Tr. at 12:14-22 (Arellanes).  C. Cameron emphasized to the Court that there is only one felony conviction on his record; otherwise, he has several misdemeanor arrests.  See Tr. at 13:21-25 (Arellanes).

The Court stated that the presumption of detention applies in this case, and, while the Court acknowledged that the defendant has met his burden of coming forward with evidence, the

presumption remains a factor, especially given that the evidence suggests widespread drug activity.  See Tr. at 17:7-11 (Court).  The Court noted that failures to appear give the Court concern.  See Tr. at 17:21-23.  The Court also stated its concern about the active probation and the misdemeanor warrant C. Cameron had at the time of this arrest.  See Tr. at 17:1-4 (Court). The inconsistencies in the story about this arrest are troubling, because C. Cameron has shown a potential to put officers at risk in the future if he fails to appear.  See Tr. at 18:5-10 (Court).  The Court noted that it is not comfortable releasing C. Cameron to a half-way house, given his substance abuse issues and habit of driving while under the influence.  See Tr. at 18:12-15 (Court).

## LAW REGARDING PRETRIAL DETENTION

Under the Bail Reform Act of 1984, 18 U.S.C. §§ 3141 through 3150, the United States may only detain a defendant pending trial after a hearing.  See 18 U.S.C. § 3142(f).  The United States must show "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."  18 U.S.C. § 3142(e).  At this hearing, the United States bears the burden of proving by a preponderance of the evidence that the defendant is a flight risk, and the burden of proving by clear-and-convincing evidence that the defendant is a danger to the community.  See 18 U.S.C. § 3142(f); United States v. Cisneros, 328 F.3d 610, 616 (10th Cir. 2003).  "The rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing."  18 U.S.C. § 3142(f). To determine whether pretrial detention is warranted, the judicial officer must consider the statutory factors set forth in 18 U.S.C. § 3142(g):

> (g)     **Factors to be considered.** -- The judicial officer shall, in determining
>          whether there are conditions of release that will reasonably assure the

appearance of the person as required and the safety of any other person and the community, take into account the available information concerning --

(1)     the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

(2)     the weight of the evidence against the person;

(3)     the history and characteristics of the person, including --

      (A)     the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

      (B)     whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4)     the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C. § 3142(g).

When a defendant is charged with certain crimes, a presumption arises that the defendant is a flight risk and a danger to the community.  See 18 U.S.C. § 3142(e)(3); United States v.

Villapudua-Quintero, 308 F. App'x 272, 273 (10th Cir. 2009)(unpublished)[3](per curiam)(recognizing that 18 U.S.C. § 3142(e) establishes a rebuttable presumption favoring detention of, among other defendants, some alleged drug offenders).  Section 3142(e)(3)(A) of Title 18 of the United States Code provides that a presumption of detention arises when "there is probable cause to believe that the person committed" certain drug offenses, specifically "an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act, the Controlled Substances Import and Export Act, or chapter 705 of title 46."  18 U.S.C. § 3142(e)(3)(A).  The United States Court of Appeals for the Tenth Circuit has explained that "[t]he grand jury indictment is sufficient to establish the finding of probable cause that defendant committed a federal drug offense with a maximum prison term of ten years or more."  United States v. Silva, 7 F.3d 1046, 1046 (10th Cir. 1993).  Accord United States v. Holguin, 971 F. Supp. 2d 1082, 1088 (D.N.M. 2011)(Browning, J.).

To determine whether the defendant has rebutted the presumption of detention, a court must consider: (i) the nature and  circumstances of the crime charged; (ii) the weight of the evidence against the defendant; (iii) the history and characteristics of the defendant, including family ties, employment, financial resources, community ties, drug or alcohol abuse history, and past conduct; and (iv) the nature and seriousness of the danger to the community or to an

---

[3] United States v. Villapudua-Quintero is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it. See 10th Cir. R. 32.1(A), 28 U.S.C. ("Unpublished opinions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit has stated: "In this circuit, unpublished orders are not binding precedent, … and … citation to unpublished opinions is not favored …. However, if an unpublished opinion … has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision."  United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).  The Court finds that United States v. Villapudua-Quintero and United States v. Pina-Aboite, 97 F. App'x 836, 836 (10th Cir. 2004)(unpublished) have persuasive value with respect to a material issue, and will assist the Court in its disposition of this Memorandum Opinion and Order.

individual that would be posed by release.  See 18 U.S.C. § 3142(g).  "Should the defendant satisfy his or her burden of production, the United States must then show by a preponderance of the evidence that the defendant presents a risk of flight, or by clear-and-convincing evidence that the defendant presents a danger to the community."  United States v. Holguin, 791 F. Supp. 2d at 1087 (citing United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001); United States v. Stricklin, 932 F.2d 1353, 1354-55 (10th Cir. 1991)("[T]he burden of persuasion regarding risk-of-flight and danger to the community always remains with the government.")).  Notably, however, even if the defendant meets his or her burden of production, "the presumption remains a factor for consideration by the district court in determining whether to release or detain."  United States v. Stricklin, 932 F.2d at 1355.  Accord United States v. Mercedes, 254 F.3d at 436.

## THE DISTRICT COURT'S STANDARD OF REVIEW

Section 3145 of Title 18 of the United States Code provides that a "court having original jurisdiction over the offense" may review a magistrate judge's detention order or release order. 18 U.S.C. § 3145(a)-(b).  "The standard of review for the district court's review of a magistrate judge's detention or release order under § 3145(a) is de novo."  United States v. Cisneros, 328 F.3d at 616 n.1.  "When the district court acts on a motion to revoke or amend a magistrate's pretrial detention order, the district court acts de novo and must make an independent determination of the proper pretrial detention or conditions for release."  United States v. Rueben, 974 F.2d 580, 585-86 (5th Cir. 1992).  See United States v. Maull, 773 F.2d 1479, 1481 (8th Cir. 1985)(stating that a district court's review of magistrate judge's order setting bond was de novo).

## ANALYSIS

Based on the nature of the Indictment's charges, there is a presumption that C. Cameron is a flight risk, as well as a danger to the community and to others.  In the face of that presumption, C. Cameron has met his burden of production to show evidence that he is not a flight risk or danger to the community.  The United States has shown, however, by a preponderance of the evidence, that C. Cameron is a flight risk, and, by clear-and-convincing evidence, that he is a danger to the community.  The Court concludes that there is no condition or combination of restrictions that would reasonably assure his appearance or the safety of the community.  <u>See</u> 18 U.S.C. § 3142(e).  The Court therefore grants the United States' Motion to Revoke.

## I.      THERE IS A PRESUMPTION OF DETENTION.

The parties do not dispute that a presumption of detention applies under 18 U.S.C. § 3142(e).  <u>See</u> Motion to Revoke at 2, Tr. at 17:7 (Court).  Section 3142(e) of Title 18 of the United States Code provides a presumption of detention for drug offenses when "a maximum term of imprisonment of ten years or more is prescribed."  <u>See</u> 21 U.S.C. § 3142(e)(3)(A).  C. Cameron faces a maximum term of 30 years imprisonment on the marijuana distribution conspiracy count.  <u>See</u> Motion to Revoke at 1.  The first charge against C. Cameron is for violation of 21 U.S.C. § 846.  <u>See</u> Rule 5 Documents at 9-10.  Specifically, § 846 provides that any person who "conspires to commit an offense described in the subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy."  21 U.S.C. § 846.  The penalty for the offense that was the object of C. Cameron's conspiracy to distribute marijuana charge is prescribed in § 841, providing that "if any person commits such a violation after a prior conviction for a felony drug offense has

become final, such person shall be sentenced to a term of imprisonment of not more than 30 years."   21 U.S.C. §841(b)(1)(C).   The charges that C. Cameron faces under the Indictment, therefore, create this presumption of detention.

## II.   BECAUSE OF THE WEIGHT OF THE EVIDENCE AGAINST C. CAMERON, THE NATURE AND CIRCUMSTANCES OF THE CRIME CHARGED, AND HIS HISTORY AND CHARACTERISTICS, CAMERON IS A FLIGHT RISK.

The Court concludes that C. Cameron should be detained pending trial.   C. Cameron cites to the Court the birth of his son as a tie to the State of California.   See Response at 1.   He also cites his intention, if he is released, to live in San Diego at the home his mother owns.   See Response at 1.   C. Cameron has proposed that the Court elevate the conditions of release to include a property bond for a house his mother owns in Arizona, release to a halfway house, and electronic monitoring.   See Response at 3.   The Court thus concludes that C. Cameron has met his burden of production in the face of the statutory presumption favoring detention. See United States v. Stricklin, 932 F.2d at 1355 ("The defendant's burden of production is not heavy, but some evidence must be produced.").   Although, given the evidence of his son, of his ties to California, and of his mother's property, and given the restrictive conditions that C. Cameron proposes, he has met his burden of production in response to the presumption, the presumption of detention "remains a factor for consideration by the district court in determining whether to release or detain."   United States v. Stricklin, 932 F.2d at 1355.

When the defendant meets his burden of production in the face of the presumption of detention, the United States must then show by a preponderance of the evidence that the defendant presents a risk of flight.   See United States v. Holguin, 791 F. Supp. 2d at 1087.   The Court looks at several factors when considering whether conditions of release will reasonably assure the appearance of the person in court as required: (i) the weight of the evidence against

the defendant; (ii) the nature and  circumstances of the crime charged; (iii) the defendant's

history and characteristics, including family ties, employment, financial resources, community

ties, drug or alcohol abuse history, and past conduct; and (iv) the nature and seriousness of the

danger to the community or to an individual that release would pose.  See 18 U.S.C. § 3142(g).

The United States has shown by clear-and-convincing evidence that C. Cameron presents

a risk of flight.  See United States v. Mercedes, 254 F.3d at 436; United States v. Stricklin, 932

F.2d at 1354-55 ("[T]he burden of persuasion regarding risk-of-flight and danger to the

community always remains with the government.").  The Court also concludes that no condition

or combination of conditions will reduce to an acceptable level the risk of C. Cameron's flight.

### A.   THE WEIGHT OF EVIDENCE AGAINST C. CAMERON DEMONSTRATES THAT HE IS A FLIGHT RISK.

A grand jury has reviewed the weight of the evidence against C. Cameron and decided

that it is sufficient to indict C. Cameron on various charges.  See Rule 5 Documents at 9, 10.

The nature and circumstances of the crime charged are serious and carry a potentially heavy

sentence.  See Motion to Revoke at 1.  Specifically, if C. Cameron is convicted of violating 21

U.S.C. § 846, he faces a maximum sentence of thirty years, with possible additional time if he is

also convicted of violating 21 U.S.C. § 843(b) and 18 U.S.C. § 1956(h).  See Rule 5 Documents

at 41.  The United States asserts that it intercepted wire communications and conducted physical

surveillance of C. Cameron in the drug trafficking operation.  See Tr. at 4:5-9 (Meyers).  The

United States also has bank records reflecting C. Cameron's alleged money laundering activities.

See Motion to Revoke at 3.  The Court believes that the weight of the evidence against C.

Cameron is great, and that his conviction is more likely than not.  C. Cameron is a smart man and

recognizes that he likely faces a conviction.  In the face of such a lengthy term of imprisonment,

and in the face of the evidence against him, C. Cameron is likely to be tempted to flee rather than spend a good portion of his life in prison. This factor thus weighs in favor of detention.

**B.    THE NATURE AND CIRCUMSTANCES OF THE CRIMES WITH WHICH CAMERON IS CHARGED DEMONSTRATE THAT HE IS A FLIGHT RISK.**

The Grand Jury issued an indictment charging C. Cameron with the following counts: (i) Conspiracy to Distribute 50 Kilograms and More of Marijuana in violation of 21 U.S.C. § 846; and (ii) Conspiracy to Launder Monetary Instruments in violation of 18 U.S.C. § 1956(h).  See Rule 5 Documents at 9-10, Count 20, Count 37.  Based on the contents of the Indictment, the scope and scale of this drug organization is significant.  Because of C. Cameron's prior conviction for a felony drug offense, the charges in the Indictment carry a maximum term of thirty years imprisonment.  Based on the serious nature of these charges, C. Cameron has incentive to flee the country or at least flee the state in which he is under pretrial supervision. See United States v. Recobo, No. CR 11-2990 JB, 2012 WL 1371975 *6, (D.N.M. Apr. 6, 2012)(Browning, J.)(noting that potentially lengthy sentence gives defendant incentive to flee); United States v. Munoz-Hernandez, No. CR 12-0128 JB, 2012 WL 5476892 *10 (D.N.M. Nov. 5, 2012)(Browning, J.)(same).  The United States argues that an aspect of the trafficking of which C. Cameron is a part involves large amounts of cash being deposited into his bank account.  See Motion to Revoke at 4.  C. Cameron has family in several states across the country, and aspects of his alleged drug trafficking involved cross-country travel.  See Bail Report at 2; Motion to Revoke at 4.  This access to cash and familiarity with travel would make it easy for C. Cameron to flee the state if he is released.  There also appears to be a sophisticated organization that could facilitate his disappearance and might have an incentive to make his disappearance happen to prevent his testimony against other members of the organization.

**C.      C. CAMERON'S HISTORY AND CHARACTERISTICS DEMONSTRATE THAT HE IS A FLIGHT RISK.**

C. Cameron has offered evidence that he is not a flight risk, but the evidence is not sufficient to convince the Court to overlook his troubling history.  C. Cameron's history and circumstances indicate that he has some ties to California, but ultimately offer further support for the finding that he is a flight risk.  C. Cameron has a new-born child in California and has lived in San Diego for a number of years.  These factors would help tie C. Cameron to the state of California if released.

On the other hand, C. Cameron has a lengthy history of substance abuse and numerous arrests.  See Bail Report at 4-5.  C. Cameron has a lengthy and documented history of substance abuse.  His mother indicated that C. Cameron has used marijuana recreationally in the past.  See Bail Report at 3.  He has been arrested numerous times for being under the influence of a controlled substance and for transportation or sale of a controlled substance.  See Bail Report at 4-5.  C. Cameron has numerous arrests for driving under the influence, including an active misdemeanor case currently pending in California for driving under the influence.  See Bail Report at 5.

C. Cameron has two failures to appear on his record.  See Bail Report at 4-5.  Multiple failures to appear, coupled with a charge of resisting arrest, even though it was later dismissed, show a disregard for a court's requirements and rules, and is evidence that the trend of failing to appear for court will continue if he is not detained.  See United States v. Hatch, No. CR 07-1500 JB, 2008 WL 2359728 *1 (D.N.M. Jan. 16, 2008)(Browning, J.)(finding that multiple failures to appear show that defendant poses a serious risk of nonappearance in the future).  The Court can see that it may be more likely that a defendant would forget about a court date for a traffic violation than for a felony charge, for which the defendant faces a minimum of ten years in

imprisonment. The Court also can see, however, that it is also more likely that a defendant will not show up for court purposefully in the face of a lengthy sentence, if he had previously missed a court date when he faced only a traffic violation.

In the end, the Court concludes that, with the resources to which he has access, it is unlikely that C. Cameron will show up voluntarily to face a charge for up to thirty years imprisonment.

In sum, by a preponderance of the evidence, given the serious penalties he faces, his extended family across the country and history of interstate travel, and the prior failures to appear in his history, C. Cameron is a flight risk. C. Cameron has significant reason to abscond and avoid incarceration, and his access to cash and his family members living in numerous states across the country make it possible for him to do so easier than many other defendants. Additionally, while he successfully met his burden of production in the face of the presumption of detention, the presumption remains a relevant factor, and the Court finds that the presumption as a factor weighs in favor of detention. See United States v. Moreno, No. 94-1596, 1994 WL 390091, at *2 (1st Cir. July 14, 1994)(unpublished)("The presumption reflects Congress' findings that drug traffickers often have the resources and foreign contacts to escape to other countries, as well as strong incentives to continue in the drug trade."). The Court is concerned that the trend of C. Cameron's failures to appear in the past will continue and is especially concerned in light of the penalties he faces in this case, compared with the possible penalties for violations in the past. In the end, the Court is convinced that the temptation will be too much.

III.    **BECAUSE OF THE WEIGHT OF THE EVIDENCE AGAINST C. CAMERON, THE NATURE AND CIRCUMSTANCES OF THE CRIME CHARGED, AND HIS HISTORY AND CHARACTERISTICS, CLEAR AND CONVINCING EVIDENCE SHOWS THAT C. CAMERON IS A DANGER TO THE COMMUNITY.**

When the defendant meets his burden of production in the face of the presumption of detention, the United States must then show by clear-and-convincing evidence that the defendant presents a danger to the community.  See United States v. Holguin, 791 F. Supp. 2d at 1087.  The Court looks at several factors when considering whether conditions of release will reasonably assure the community's safety: (i) the weight of the evidence against the defendant; (ii) the nature and  circumstances of the crime charged; (iii) the defendant's history and characteristics, including family ties, employment, financial resources, community ties, drug or alcohol abuse history, and past conduct; and (iv) the nature and seriousness of the danger to the community or to an individual that release would pose.  See 18 U.S.C. § 3142(g).

The United States has shown by clear-and-convincing evidence that C. Cameron is a danger to the community.  See United States v. Mercedes, 254 F.3d at 436; United States v. Stricklin, 932 F.2d at 1354-55 ("[T]he burden of persuasion regarding risk-of-flight and danger to the community always remains with the government.").  The Court concludes that no condition or combination of conditions will reduce to an acceptable level the danger C. Cameron would pose to the community if released.

A.      **THE NATURE AND CIRCUMSTANCES OF THE CRIMES WITH WHICH C. CAMERON IS CHARGED DEMONSTRATE THAT HE IS A DANGER TO THE COMMUNITY.**

The Grand Jury issued charges C. Cameron with: (i) Conspiracy to Distribute 50 Kilograms and More of Marijuana in violation of 21 U.S.C. § 846; and (ii) Conspiracy to Launder Monetary Instruments in violation of 18 U.S.C. § 1956(h).  See Rule 5 Documents at 9-10, Count 20, Count 37.  Based on the contents of the Indictment, the scope and scale of this

drug organization is significant.  The United States contends that the interstate nature of the trafficking operation suggests that C. Cameron is a danger to the community.  See Motion to Revoke at 4.  Based on the nature of the charges against him involving such a large scale drug organization, the Court is concerned that C. Cameron would be a danger to the community if he is released.  See United States v. Gonzalez, No. CR 12-0128 JB, 2012 WL 843728 *11 (D.N.M. Mar. 9, 2012)(Browning, J.)(finding that drug trafficking activities indicate a danger to the community if released); United States v. Cook, 880 F.2d 1158, 1161 (10th Cir. 1989) (recognizing that the 18 U.S.C. § 3142 "danger-to-the-community factor is not simply about physical violence; the risk that a defendant will continue to engage in drug trafficking constitutes a danger to the community").  In combination with the flight risk, the Court is concerned that C. Cameron would disappear or return to the protection of the drug trafficking organization.  C. Cameron's drug trafficking activities created a danger to the community, and the risk that he would continue in those activities constitutes a danger to the community.

**B.  C. CAMERON'S HISTORY AND CHARACTERISTICS DEMONSTRATE THAT HE IS A DANGER TO THE COMMUNITY.**

C. Cameron has a lengthy history of substance abuse and numerous arrests.  See Bail Report at 4-5.  In addition to C. Cameron's lengthy and documented history of substance abuse, M. Cameron indicated that C. Cameron used marijuana recreationally in the past.  See Bail Report at 3.  He has been arrested numerous times for being under the influence of a controlled substance and for transportation or sale of a controlled substance.  See Bail Report at 4-5.  C. Cameron has an active misdemeanor case currently pending in California for driving under the influence.  See Bail Report at 5.  C. Cameron was charged with resisting arrest in Ohio.  Granted, C. Cameron's charge for resisting arrest was dismissed, but that does not resolve the Court's concern that, if C. Cameron failed to appear in this case, as he has done in the past, the officers

tasked with arresting him will be at risk.  See United States v. Cachucha, 778 F. Supp. 2d 1172 (D.N.M. 2011)(Browning, J.)(finding that resisting arrest indicates that defendant is a danger to the community).  If the Court released him, he would likely violate the conditions of release, and the Court is concerned it would put United States Marshals in danger when they came to arrest him.

In sum, C. Cameron is, by clear-and-convincing evidence, a danger to the community. The scope of the alleged drug trafficking activity and the history of various offenses indicate a risk that C. Cameron will be a danger to the community if released from detention.  See United States v. Pina-Aboite, 97 F. App'x at 836 (citing United States v. Cook, 880 F.2d at 1161).  If C. Cameron was released and continued on his path of substance abuse and driving while under the influence, he would pose a danger to the safety of the community he released.  This offense was allegedly committed while on active probation, showing a propensity for continually disregarding the law.  Moreover, if C. Cameron failed to appear in court when required, as he has done in the past, the officers tasked with arresting him might be put at risk.  In the end, the Court is convinced that the danger C. Cameron poses to the community is too great.

**IV.    THE COURT CONCLUDES THAT IT CANNOT REDUCE C. CAMERON'S RISK OF NONAPPEARANCE OR HIS DANGER TO THE COMMUNITY TO ACCEPTABLE LEVELS EVEN WITH RESTRICTIVE CONDITIONS.**

C. Cameron proposes that the Court elevate the conditions of release to include these conditions: (i) a property bond for a house his mother owns in Arizona; (ii) a release to a half-way house; and (iii) electronic monitoring.  While these three conditions would, to some extent, mitigate his risk of nonappearance, the Court does not believe that they would do so at an acceptable level to reasonably assure his appearance.  The Court has had difficulty in the past with defendants who are allegedly involved in a criminal organization becoming fugitives if the

Court decides to release them, even when the defendants are on particularly restrictive conditions.  C. Cameron has previously had access to large amounts of cash and has traveled extensively, which may give him incentive and opportunity to flee.  The risk of flight and danger to the community is too great to overcome.  Consequently, the Court will order C. Cameron detained pending trial.

The Court gave consideration to the idea of releasing C. Cameron to La Posada Halfway House in Albuquerque under lockdown conditions with electronic monitoring.  These are the most stringent conditions that the Court could envision, and still release C. Cameron.  The Court is not comfortable with C. Cameron being on release in California, even in a halfway house there or on electronic monitoring.  The Court's parole officer may not be able to contract with a halfway house in California and could not effectively supervise him there; some other court would have to do so.  Electronic monitoring is not much help if someone wants to leave and head out of the country.  In the end, if C. Cameron is determined to leave, he would be able to do so, and he will either escape entirely or put at risk those United States Marshals sent to arrest him. The Court concludes that the United States has shown by a preponderance of the evidence that C. Cameron is a flight risk, and closely related to the risk of flight is the risk that he is a danger to the community.  Putting him in a halfway house, even in Albuquerque with electronic monitoring and under lockdown conditions, does not reduce these two risks to acceptable levels.

**IT IS ORDERED** that: (i) the United States' Motion to Revoke Magistrate Judge's Release Order, filed on January 11, 2013 (Doc. 163), is granted; and (ii) Defendant Chase Cameron shall be detained pending trial.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Kenneth J. Gonzales
  United States Attorney
Stephen R. Kotz
Joel R. Meyers
Cynthia L. Weisman
Shana B. Long
  Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

     *Attorneys for the Plaintiff*

Angela Arellanes
Albuquerque, New Mexico

     *Attorney for the Defendant*